

RECEIVED AW
3/30/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ANDREW SLABON,

          Plaintiff,

    v.

MARIA PAPPAS,
COOK COUNTY TREASURER AND EX
OFFICIO COLLECTOR,
FRITZ KAEGI,
COOK COUNTY ASSESSOR,
COOK COUNTY BOARD OF REVIEW,
COUNTY OF COOK,

          Defendants.

1:26-cv-03496
Judge Martha M. Pacold
Magistrate Judge Jeannice W. Appenteng
RANDOM / Cat. 2

JURY DEMAND

**COMPLAINT**

The plaintiff, Andrew Slabon, appearing pro se, brings this complaint against defendants Maria

Pappas, Treasurer and Ex Officio County Collector of Cook County, Illinois ("Treasurer"), Fritz

Kaegi, Assessor of Cook County, Illinois ("Assessor"), the Cook County Board of Review

("Board of Review"), and the County of Cook, Illinois, and states as follows:

**NATURE OF THE ACTION**

1. This action is brought under the Fourteenth Amendment to the United States

    Constitution. The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and

    1343, and related state-law claims fall within the Court's pendent jurisdiction.

1

**JURISDICTION AND VENUE**

2. Jurisdiction is not barred by the Tax Injunction Act, 28 U.S.C. § 1341, or the principles of federal-state comity, because no "plain, speedy, and efficient" remedy exists in Illinois courts for the violation of plaintiffs' federal constitutional rights.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that Defendants reside within the Northern District of Illinois and a substantial part of the events and omissions giving rise to the claims asserted herein occurred within this judicial district.

**PARTIES AND SUBJECT PROPERTY**

4. Plaintiff Andrew Slabon resides at 2644 North Mason Avenue, Chicago, Illinois 60639. Plaintiff is the owner of the real property commonly known as 2644 North Mason Avenue, Chicago, Illinois 60639, identified by Cook County Property Index Number (PIN) 13-29-408-019-0000 (hereinafter Subject Property), and located in Jefferson Township, Cook County, Illinois..

5. Defendant Maria Pappas is the duly elected Treasurer of Cook County, Illinois, and is responsible for the collection of real property taxes, the maintenance of tax records, and the administration and enforcement of tax delinquencies and tax sales within Cook County. She is sued in her official capacity.

6. Defendant Fritz Kaegi is the duly elected Assessor of Cook County, Illinois, and is responsible for the valuation and assessment of real property for purposes of taxation within Cook County. He is sued in his official capacity.

7. Defendant Cook County Board of Review is a governmental body established under the laws of the State of Illinois and is responsible for hearing and deciding taxpayer assessment appeals and for equalizing and correcting property assessments within Cook County.

8. Defendant County of Cook is a municipal corporation and political subdivision of the State of Illinois responsible for the administration of county government, including the offices of the Treasurer, Assessor, and the Board of Review, and is liable for the acts, policies, practices, and customs of its officials and agencies.

9. At all times material to this Complaint, Defendants were acting under color of the statutes, ordinances, regulations, customs, policies, and usages of the State of Illinois and the County of Cook, and within the scope of their respective official duties relating to the assessment, review, administration, and collection of real property taxes in Cook County.

**FACTUAL BACKGROUND: ALLEGATIONS APPLICABLE TO ALL COUNTS**

10. Under Illinois law, County Assessors are required to perform specific statutory duties to accurately ascertain the fair market value of real property during the assessment process.

11. Inspection and Viewing Requirements: "the assessor, in person or by deputy, shall actually view and determine as near as practicable the value of each property listed for taxation" (35 ILCS 200/9-155); and "a viewing … means actual viewing of the visible property in its entirety from, on or at the site of the property" (35 ILCS 200/9-80).

12. Property Record System Requirements: "The assessor shall maintain a detailed property record system, including 'property record cards, including appraisals … [to be] available … to all assessing officials and to the public'" (35 ILCS 200/9-30); "prepare and maintain … tax maps and up-to-date lists of property owners … and property record cards for all … property" (35 ILCS 200/9-35); and "prepare and maintain tax maps, up-to-date lists of property owners' names and addresses, and property record cards for all … property" (35 ILCS 200/9-40).

13. Public Access to Records: "all property record cards … shall be public records, and shall be available for public inspection during business hours" (35 ILCS 200/9-20); and the assessor shall "enter … the elements … of valuation and computations … taken into consideration … in ascertaining … the fair cash value … including … enhancing or detracting elements … The records shall be available … to the taxpayer" (35 ILCS 200/16-8).

14. Certification of Assessed Values: The assessor is required to certify the assessment roll to the County Clerk, including the assessed value of each property, by a statutory deadline (35 ILCS 200/9-45). This certification serves as the official record for tax billing and appeals (35 ILCS 200/21-5), and failure to properly certify the assessed values constitutes noncompliance with the assessor's statutory duties.

15. Verification and Examination of Assessment Method: (35 ILCS 200/16-10); authorizes the Board of Review to "summon any assessor, deputy, or other person to appear … to be examined under oath concerning the method by which any evaluation has been ascertained, and its correctness" (35 ILCS 200/16-90); Requires boards of review to keep files and records of assessment complaints open to public inspection. (35 ILCS 200/16-10); requires assessors to "verify by affidavit that … the assessed value … is a just and equal assessment … according to law" (35 ILCS 200/9-230); and mandates that assessors "correct … and list and assess the property in the manner required by law … correct the descriptions … and distribute the assessment … among the parcels" .

16. Illinois law provides for a system of ad valorem property taxation governed first by the state constitution, which limits property tax classifications as follows:

> Subject to such limitations as the General Assembly may hereafter prescribe by law, counties with a population of more than 200,000 may classify or continue to classify real property for purposes of taxation. Any such classification shall be reasonable and assessments shall be uniform within each class. The level of assessment or rate of tax of the highest class in a county shall not exceed two and

one-half times the level of assessment or rate of tax of the lowest class in that county. " Ill. Const. 1970, Art. IX, § 4(b).

17. This constitutional provision reflects the requirement that any classification must be reasonable and that "assessments shall be uniform within each class," ensuring that property taxation is applied in a consistent and equitable manner.

18. Notwithstanding these statutory requirements, the Cook County Assessor's Office fails to adhere to any of the duties enumerated above with respect to the Subject Property. The Office instead conducts "desk reviews", relies on "human analysts" to study "sales comparables" in rendering an "educated guess",

19. Upon information and belief, the use of  "Comparable sales" is a practice commonly referred to as "sale chasing", rather than performing the inspections, record-keeping, public disclosure, and verification mandated by Illinois law.

20. "Sales chasing" refers to the improper valuation practice whereby assessed values are adjusted based on recent sale prices of individual properties the Assessor designates as "comparables," notwithstanding that such properties do not share materially similar characteristics with the subject property. This methodology departs from accepted appraisal standards and statutory requirements under the Illinois Property Tax Code, including obligations concerning inspection, recordkeeping, verification of property characteristics, and evidentiary support for valuation determinations.

21. On August 1, 2024, at 1:37 PM, in response to Plaintiff's request for clarification regarding methods used by the County in assessing property values, the assessor office stated: "the Assessor is not permitted to value similar properties within the same boundary at different proportions of their true value," further adding, "we consider what the fair cash value would be for a property if it had sold recently in its reassessment year."

22. Plaintiff compiled nine comparables within the Jefferson Township matching the subject property's characteristics,

23. Among the comparables Plaintiff compiled, the property located at 2356 N. Newland Ave., PIN 13-31-103-012-0000, which sold in 2024 for $70,000, illustrates the extent of profitability of the Assessor's fraudulent valuations. Despite the actual 2024 sale price of $70,000, the Assessor's 2024 assessed value of that property was set at $338,510, reflecting an overvaluation of $268,510, or 383.59%. This example, consistent with the other comparables presented by Plaintiff, further confirms that the Assessor's "Guess" in determinations of "fair cash value" are not only inaccurate but systemically inflated far beyond actual market transactions.

24. Here are three added lines that incorporate your required phrasing while strengthening the argument:

25. In addition to the above-mentioned comparable, the following comparables further establish a consistent disparity between actual market transactions and the assessed values assigned by the Assessor, evidencing a systematic pattern of overvaluation. The repeated magnitude and uniformity of these discrepancies across multiple

properties demonstrate that such overvaluations are not isolated errors, but rather indicative of a recurring and intentional assessment practice.

26. The following comparables further establish the Assessor's pattern of overvaluation, with each property listed by address, PIN, year of sale, sale price, assessed value, difference, and percentage of overvaluation:

| Address | PIN | Sale Year | Sale Price | Assessor's Value | Difference | Overvalue |
|---|---|---|---|---|---|---|
| 2105 N. Melvina Ave. | 13-32-120-024-0000 | 2016 | $71,000 | $235,350 | $164,350 | 231.38% |
| 2200 N. Mango Ave. | 13-32-212-049-0000 | 2017 | $80,500 | $236,600 | $156,600 | 195.75% |
| 2448 N. Normandy Ave. | 13-30-408-017-0000 | 2024 | $82,000 | $180,470 | $98,470 | 120.08% |
| 2431 N. New England Ave. | 13-30-329-022-0000 | 2024 | $87,500 | $180,000 | $92,500 | 105.71% |
| 2905 N. Moody Ave. | 13-29-118-042-0000 | 2024 | $116,000 | $220,000 | $104,000 | 89.66% |
| 5503 W. Drummond Pl. | 13-28-312-020-0000 | 2024 | $120,000 | $190,000 | $70,000 | 58.33% |
| 5102 W. Belden St. | 13-33-201-037-0000 | 2024 | $130,000 | $250,000 | $120,000 | 92.31% |
| 2640 N. Mason Ave. | 13-29-408-020-0000 | 2024 | $150,000 | $400,000 | $250,000 | 166.67% |

27. Each of these properties illustrates a consistent pattern of inflated assessments disconnected from actual market transactions, thereby confirming the systemic nature of the Assessor's fraudulent overvaluation practices.

28. Plaintiff has demonstrated that the properties selected as purported comparables are not, in fact, comparable in any meaningful respect to the subject property, including but not limited to differences in condition, improvements, and other relevant characteristics. The selective reliance on such non-comparable sales produces systematic inequities by disproportionately aligning assessments with recent transactions involving carefully chosen properties, while disregarding similarly situated properties that have not sold or that have sold at significantly lower values than those reflected in the Assessor's valuations at the time of sale.

29. Upon information and belief, the assessor and BOR were well aware that such practices result in non-uniform and non-proportionate assessments, in contravention of the requirements imposed under Illinois law.

30. In late 2025, Defendant Fritz Kaegi publicly characterized the overall property tax system as *"inherently unfair,"* noting that shifts in how higher value properties assessments are reduced end up increasing tax burdens for Black and Latino homeowners. He positioned these statements as part of legislative advocacy for property tax relief mechanisms to address what he described as *racial inequity* in outcomes.

31. In 2023, the Cook County President, Toni Preckwinkle, released the Property Tax Reform report, prepared under the Cook County Property Tax (PTAX) Reform Group, to document and analyze structural issues in the county's property tax system; the report identifies how the Assessor's use of regression-based mass appraisal — a statistical modeling method that predicts property market value by correlating sale prices with physical and locational characteristics across many properties — has contributed to uneven assessment outcomes, including patterns where lower-income and minority neighborhood properties are relatively overvalued and higher-income neighborhood properties are relatively undervalued, a regressive assessment effect the report frames as a critical equity concern requiring systemic policy reform, and it explicitly references **independent investigations** such as media analyses by *Chicago Tribune* and *ProPublica* that documented these inequitable and regressive assessment patterns, underscoring the county's recognition of structural disparities targeting low income properties.

32. Independent studies and media reporting (e.g., Chicago Tribune, ProPublica) documented that prior assessment systems produced *regressive valuation patterns* — overvaluing lower-priced homes relative to higher-priced homes — and that appeals processes tended to *worsen* inequities because wealthier property owners appealed more often and won more reductions.

33. The Cook County Assessor's Office has, through publicly released reports and website publications, disclosed the procedures it employs in determining assessed values. The Office has indicated that it has firmly rejected the Uniform Standards of Professional Appraisal Practice (USPAP), which are nationally recognized standards governing the

development, reporting, and ethical practice of property appraisals. Instead the Assessor "Invites" the International Association of Assessing Officers (IAAO) to conduct audits and provide "strategic guidance" to ensure it meets "professional standards",

34. The Plaintiff engaged in a formal Freedom of Information Act ("FOIA") correspondence with the Cook County Assessor's Office, through its Director of Legal and Ethics Officer, Christina Lynch, beginning in July 2024 and concluding in August 2025. This extensive FOIA correspondence revealed that the Cook County Assessor's Office has never maintained any records documenting the assessed value, prior valuations, or appraisal methodology for the Subject Property over its 111-year history.

35. In 2024, Plaintiff received a letter from a law firm "OWNWELL" soliciting legal representation in connection with the Subject Property in exchange for payment. Through this correspondence, Plaintiff became aware of the newly assessed value assigned to the Subject Property for the tri-annual 2024 assessment year.

36. The letter indicated that the newly adjusted "Market Value" (AV) of the Subject Property had increased by $83,050, or approximately 44.45%, rising from $186,950 in the prior year to $270,000.

37. Neither the correspondence from the third-party sender nor any notice issued by the Assessor's Office identified or described any physical improvements, renovations, or material changes to the Subject Property occurring between the prior tri-annual assessment and the 2024 reassessment that would justify such a substantial increase in

11

purported market value. The communication further failed to provide any factual basis, supporting data, or explanation correlating the increase to observable property-specific conditions, thereby indicating that the reassessment was not predicated upon any verifiable change in the Subject Property but instead resulted from unexplained and unsupported valuation determinations.

38. Plaintiff was not informed, at the time of the reassessment, by the Assessor's Office of the increased 2024 valuation, nor was any justification for such increase provided. Plaintiff only obtained notice of the reassessed value through a subsequent Freedom of Information Act request directed to the Assessor's Office, well after the issuance of the aforementioned correspondence.

39. Plaintiff thereafter filed a formal appeal with the Cook County Board of Review ("BOR") challenging the 2024 assessed value of the Subject Property.

40. At all times relevant to this complaint, the Property Tax Code has also permitted review of assessments by the BOR. The BOR acts only on the complaint of a taxpayer or taxing district, or on the motion of one of its members, and it therefore reviews only a fraction of the assessments made by the Assessor for any tax year. 35 ILCS 200/5-5(b), 200/16-95 et seq.

41. For each tax year, the Illinois Department of Revenue ("IDOR") establishes an equalization factor intended to ensure that the aggregate Equalized Assessed Value ("EAV") of property within Cook County approximates thirty-three and one-third percent (33 1/3%) of fair cash value, as defined by the Illinois Property Tax Code. 35 ILCS

12

200/1-55. In determining the appropriate equalization factor, IDOR conducts sales ratio studies analyzing the relationship between assessed values and actual market values, as reflected by arm's-length sales across all major classes of property. The equalization factor for a given year is derived from the averaged and adjusted results of such studies over the preceding three-year period and is uniformly applied to all assessed valuations within the county to achieve the statutory assessment level. See 35 ILCS 200/17-5 et seq.

42. The Cook County Clerk ("Clerk") designates geographic "tax code" areas, each corresponding to a unique combination of taxing districts that levy taxes within that area. 35 ILCS 200/18-10 et seq. In addition, the Clerk receives and certifies the assessed valuations, as equalized, for purposes of tax extension in accordance with the Property Tax Code. See 35 ILCS 200/18-40. For each taxing district, the Clerk calculates a tax rate by dividing the district's certified levy by its aggregate Equalized Assessed Value ("EAV"), subject to applicable statutory limitations and adjustments. 35 ILCS 200/18-45 et seq. The aggregate of these individual district rates within a given tax code area constitutes the composite tax rate, which, when applied to a property's EAV—after accounting for any applicable exemptions—determines the total property tax liability for that parcel for the tax year.

43. Because the composite tax rate is uniform within each tax code area and the equalization factor is applied uniformly across Cook County, the assessed valuation assigned to each parcel—apart from the effect of any applicable statutory exemptions—determines that parcel's proportionate share of the total tax burden imposed by the applicable taxing districts. However, as alleged herein, the equalization factor operates upon underlying assessed valuations that are not derived from actual fair cash value, but instead from

13

arbitrary and speculative estimates made by the Cook County Assessor. As a result, the uniform application of both the equalization factor and the composite tax rate serves only to distribute tax liability based upon conjectural valuations lacking any factual or lawful basis, rather than on true market value as required by law.

44. The Collector calculates and issues tax bills to each taxpayer based upon the property's assessed valuation, its Equalized Assessed Value ("EAV") after application of any exemptions, and the applicable composite tax rate. As alleged herein, each of these components is wholly dependent upon the Assessor's initial valuation determinations, which are not grounded in actual fair cash value but instead in unsupported and arbitrary guesswork. At all times relevant hereto, the tax bills issued by the Collector have expressly reflected these components as the basis for the tax imposed. With respect to Class 2 property, such bills have further identified the property's market value (denominated as "property value") and the statutory level of assessment upon which the assessed valuation was purportedly derived, notwithstanding that such figures are themselves the product of speculative and unfounded valuation methods rather than any ascertainable market reality.

45. In Cook County, failure to pay property taxes triggers a structured enforcement mechanism that can result in the loss of one's property. Unpaid taxes are first certified by the Cook County Collector, and if the total unpaid balance reaches approximately $10,000, the Collector is authorized to sell the delinquent tax debt to a third-party purchaser. The purchaser, having acquired the right to the debt, may then initiate foreclosure proceedings and ultimately obtain a tax deed to the property, effectively transferring ownership. This statutory framework creates a situation where the financial

threshold for losing a property through tax foreclosure is dramatically lower than the actual fair market value of the property, exposing taxpayers to the risk of losing real estate worth many times the amount of their unpaid taxes. Consequently, even modest unpaid assessments can trigger a chain of events that culminates in involuntary divestiture of property, illustrating the coercive power embedded in the county's tax collection system and the disproportionate impact of arbitrary or inflated assessments on property owners.

46. On April 3, 2025, Plaintiff independently discovered that, on March 31, 2025, the BOR had reached a conclusion on his appeal. This discovery was the result of Plaintiff's constant and repeated efforts to monitor the status of the appeal, as the BOR made no effort to notify Plaintiff of its decision. The BOR's failure to provide notice directly impacted the time within which Plaintiff could seek further review before the Property Tax Appeal Board ("PTAB").

47. The BOR decision reflected a readjustment of the assessed value, reducing the Subject Property's valuation from $246,550 to $230,470. This adjusted AV represents an increase of $43,520, or approximately 23.28%, over the prior year's Market Value of $186,950.

48. In support of its findings, the BOR included an "Analysis Evidence Sheet," which consists primarily of a list of details for "Selected Comparable Properties" (hereinafter "BOR Comps").

49. The BOR Comps, as reflected in the "Analysis Evidence Sheet", include the following properties and Property Index Numbers:

15

| Address | PIN |
|---|---|
| 2526 N Marmora Ave | 13-29-417-030-0000 |
| 2516 N Mason Ave | 13-29-416-035-0000 |
| 2511 N Mason Ave | 13-29-417-016-0000 |
| 2628 N Mason Ave | 13-29-408-024-0000 |
| 2506 N Marmora Ave | 13-29-417-037-0000 |

50. None of the BOR Comps remotely matched the interior characteristics of the subject property.

51. On or about January 1, 2025, Plaintiff began research and preparation for an appeal to the Illinois Property Tax Appeal Board ("PTAB"), which was completed and filed on April 20, 2025.

52. Plaintiff conducted independent analysis of the comparable properties relied upon by the Board of Review in the 2024 appeal and determined that those properties reflected an average increase of approximately 14.46% between their 2023 and 2024 assessed values. In contrast, the Subject Property experienced a 44.45% increase in its assessed value during the same period, followed by a Board of Review reduction of 31.88%. These figures reflect a substantially greater adjustment than the average change observed among the selected comparables and demonstrate a significant disparity in the assessment treatment applied to the Subject Property.

53. Plaintiff's review of the BOR Comps revealed the following details for each property:

16

| Address | PIN | 2023 CCAO Market Value | 2024 CCAO Market Value | Dollar Increase | Percentage Increase |
|---|---|---|---|---|---|
| 2526 N Marmora Ave | 13-29-417-0 30-0000 | $180,000 | $200,000 | $20,000 | 11.11% |
| 2516 N Mason Ave | 13-29-416-0 35-0000 | $170,000 | $190,000 | $20,000 | 11.76% |
| 2511 N Mason Ave | 13-29-417-0 16-0000 | $200,000 | $230,000 | $30,000 | 15.00% |
| 2628 N Mason Ave | 13-29-408-0 24-0000 | $190,000 | $220,000 | $30,000 | 15.79% |
| 2506 N Marmora Ave | 13-29-417-0 37-0000 | $170,000 | $200,000 | $30,000 | 17.65% |

54. These figures demonstrate that the year-over-year percentage increases of the BOR comparables were substantially lower than the Subject Property's initial assessed value increase of 31.88% to $246,550 from $186,950, with the BOR reassessed value reduced by 6.53% to $230,470, which still represents a year-over-year increase of 23.28%, significantly higher than other properties as reflected in the BOR comparables.

55. Upon information and belief, the Cook County Assessor's determination of the Subject Property's assessed value and the 31.88% increase to $246,550 described above were a direct and retaliatory response to Plaintiff's repeated filings of appeals and tax objection complaints with both the BOR, Circuit Court of Cook County and the Illinois Property Tax Appeal Board. These filings, challenging the legality and accuracy of prior assessments, appear to have triggered reassessment practices that resulted in

disproportionately higher valuations for the Subject Property compared to similarly situated BOR comparables.

56. Upon information and belief, the Board of Review's reassessment—which reduced the assessed value by 6.53% to $230,470, yet still resulted in a year-over-year increase of 23.28%—was part of a coordinated scheme with the Cook County Assessor's Office to impose and preserve inflated property valuations.The nominal reduction was calculated to create the false appearance of a successful appeal, while ensuring that the assessment remained substantially higher than the prior year. This conduct demonstrates that the Board of Review knowingly ratified the Assessor's excessive valuation and participated in perpetuating the unlawful assessment.

57. Plaintiff undertook a systematic review of prior assessments and valuations of the subject property conducted by the Assessor and the Board of Review, beginning with the 2016 tax year appealed in 2017, 2016 being the time when Plaintiff commenced payment of property taxes on the Subject Property.

58. In or about March 2025, during the course of reviewing records obtained through the FOIA correspondence in preparation for an appeal with PTAB, the Plaintiff discovered a recurring pattern demonstrating that the Cook County Assessor's Office and the Cook County Board of Review had been systematically manipulating the assessed value of the Subject Property in response to prior appeal outcomes.

59. One of the records obtained by Plaintiff through a Freedom of Information Act request was a "PIN Value History" extending back to 1997, which represents the full extent of records the Assessor's Office claimed to have preserved. The record demonstrates that

the Subject Property's assessed values remained constant throughout each triennial

assessment cycle, with adjustments occurring solely at the commencement of a new

tri-annual cycle.

| YEAR | TOWN | PIN | LAND_VAL | BLDG_VAL | TOT_VAL |
|---|---|---|---|---|---|
| 1997 | 71 | 13-29-408-0 19-0000 | 3148 | 8041 | 11189 |
| 1998 | 71 | 13-29-408-0 19-0000 | 3148 | 8041 | 11189 |
| 1999 | 71 | 13-29-408-0 19-0000 | 3148 | 8041 | 11189 |
| 2000 | 71 | 13-29-408-0 19-0000 | 3936 | 8237 | 12173 |
| 2001 | 71 | 13-29-408-0 19-0000 | 3936 | 8237 | 12173 |
| 2002 | 71 | 13-29-408-0 19-0000 | 3936 | 8237 | 12173 |
| 2003 | 71 | 13-29-408-0 19-0000 | 3936 | 13613 | 17549 |
| 2004 | 71 | 13-29-408-0 19-0000 | 3936 | 13613 | 17549 |
| 2005 | 71 | 13-29-408-0 19-0000 | 3936 | 13613 | 17549 |
| 2006 | 71 | 13-29-408-0 19-0000 | 6547 | 21192 | 27739 |
| 2007 | 71 | 13-29-408-0 19-0000 | 6547 | 21192 | 27739 |
| 2008 | 71 | 13-29-408-0 19-0000 | 6547 | 21192 | 27739 |
| 2009 | 71 | 13-29-408-0 19-0000 | 4910 | 18431 | 23341 |
| 2010 | 71 | 13-29-408-0 19-0000 | 4910 | 18431 | 23341 |

| 2011 | 71 | 13-29-408-0 19-0000 | 4910 | 18431 | 23341 |
| --- | --- | --- | --- | --- | --- |
| 2012 | 71 | 13-29-408-0 19-0000 | 3682 | 13516 | 17198 |
| 2013 | 71 | 13-29-408-0 19-0000 | 3682 | 13516 | 17198 |
| 2014 | 71 | 13-29-408-0 19-0000 | 3682 | 13516 | 17198 |
| 2015 | 71 | 13-29-408-0 19-0000 | 4092 | 14209 | 18301 |
| 2016 | 71 | 13-29-408-0 19-0000 | 4092 | 14209 | 18301 |
| 2017 | 71 | 13-29-408-0 19-0000 | 4092 | 12767 | 16859 |
| 2018 | 71 | 13-29-408-0 19-0000 | 4501 | 15149 | 19650 |
| 2019 | 71 | 13-29-408-0 19-0000 | 4501 | 13490 | 17991 |
| 2020 | 71 | 13-29-408-0 19-0000 | 4501 | 11511 | 16012 |
| 2021 | 71 | 13-29-408-0 19-0000 | 6138 | 12557 | 18695 |
| 2022 | 71 | 13-29-408-0 19-0000 | 6138 | 12557 | 18695 |
| 2023 | 71 | 13-29-408-0 19-0000 | 6138 | 12557 | 18695 |

60. A tri-annual assessment is the statutorily mandated reassessment process under which the Cook County Assessor revalues properties once every three years, with updated valuations applied uniformly for all properties within a given reassessment group. Cook County is divided into three geographic reassessment districts—north suburbs, south and

west suburbs, and the City of Chicago—each of which is scheduled for reassessment on a rotating three-year cycle. In the current cycle, townships in the City of Chicago were reassessed in 2024, the north suburbs were last reassessed in 2022 and will be reassessed again in 2025, and the south and west suburbs were last reassessed in 2023 and are next reassessed in 2026. Under this system, a property's assessed value remains unchanged throughout the three-year period in which it is not scheduled for reassessment, and adjustments occur only at the commencement of its next tri-annual cycle absent other statutory adjustments. However, the Assessor occasionally revalues some properties in the interim years of a triennium. See 35 ILCS 200/9-85, 9-160.

61. Specifically, the 1997 cycle was assessed at $11,189, the 2000 cycle at $12,173, the 2003 cycle at $17,549, the 2006 cycle at $27,739, the 2009 cycle at $23,341, the 2012 cycle at $17,198, and the 2015 cycle at $18,301. Within each respective cycle, the assessed value remained constant for all three years.

62. This long-established pattern was first disrupted in 2017, the final year of the 2015 triennial cycle, when a Board of Review appeal resulted in a reduction of the assessment to $16,859.

63. At all times relevant to this complaint, the Property Tax Code has also permitted review of assessments by the BOR. The BOR acts only on the complaint of a taxpayer or taxing district, or on the motion of one of its members, and it therefore reviews only a fraction of the assessments made by the Assessor for any tax year. 35 ILCS 200/5-5(b), 200/16-95 et seq.

21

64. In 2017, Plaintiff submitted a formal tax appeal to the BOR supported by a certified appraisal valuing the Subject Property at $80,000. At that time the Cook County Assessor initially assigned a 2016 Market Value of $183,010.

65. Following the appeal, the Board of Review reduced the valuation by 7.88% to $168,590 from the original 2016 value. Notwithstanding this reduction, the corrected 2016 value still exceeded the appraised value by 110.74% or $88,590..

66. In 2018, following the 2017 appeal reduction, the Cook County Assessor reassessed the subject property and increased the Market Value of the Subject Property by 16.56% to $196,500, a double percentage increase value over the 2017 BOR-reduced value of $168,590. This increase was imposed without any physical improvements or documented market justification, effectively offsetting the prior year's reduction and restoring the valuation above pre-appeal levels.

67. In 2019, Plaintiff again submitted a formal tax appeal to the BOR challenging the Assessor's 2018 reassessment. At that time, the Cook County Assessor had assigned a Revised Total Assessed Value of $196,500 to the Subject Property. Following review of the appeal, the BOR reduced the Revised Total Assessed Value by 8.44% to $179,910, representing a reduction of $1,659 from the Assessor's assessed amount.

68. Notwithstanding this reduction, the resulting assessed value remained substantially elevated in relation to the previously submitted appraisal evidence and continued the pattern in which modest reductions granted through the appeal process were preceded or followed by disproportionate increases imposed by the Assessor in subsequent assessment cycles.

69. The sequence of assessment increases and appeal reductions described above demonstrates a recurring and deliberate pattern in which the Cook County Assessor's Office and the BOR adjusted assessment levels and corresponding reductions in a manner that effectively neutralized the relief obtained through the statutory appeal process. Rather than correcting the underlying valuation errors identified by Plaintiff, the Assessor imposed substantial post-appeal increases in subsequent assessment cycles, while the BOR granted comparatively modest reductions that only partially offset those increases. The practical effect of this alternating pattern was to restore the valuation to substantially similar or higher levels over time, thereby nullifying the economic benefit of the appeals and rendering the administrative review process nominal at best. This repeated cycle reflects a deliberately choreographed pattern in which reductions by the BOR were predictably followed by increases imposed by the Cook County Assessor's Office in magnitudes approximating double the prior reduction, and thereafter partially reduced again, such that each iteration preserved and reinforced a net upward adjustment in the assessed value.

70. The disproportionate 2018 increase closely followed the 2017 appeal and resulted in a valuation nearly double the percentage decrease from the year before—16.56% above the corrected value compared to the 7.88% reduction previously applied. This reversal in valuation occurred directly after Plaintiff's appeal activity and restored the valuation trajectory to pre-appeal levels.

71. Plaintiff was unable to file an appeal for the 2018 tax year and was required to pay property taxes based on the inflated $196,500 valuation.

23

72. The governing tax code prohibits taxpayers from contesting the assessed value of a prior tax year, even where clear evidence exists that the valuation was erroneous.

73. As a result, the 2018 overvaluation remained unchallenged and uncorrected, solely because Plaintiff was unable to file an appeal for that year, resulting in substantial and irreparable harm.

74. In 2019, the Assessor again assigned a Market Value of $196,500, far exceeding Plaintiff's 2017 appraisal of $80,000 by $116,500, or approximately 145.63%. Upon appeal, the valuation was reduced to $179,910, a downward correction of 8.44% or $16,590, which is roughly half of the prior year's 16.56% increase.

75. The two reductions—7.88% in 2017 and 8.44% in 2019—total 16.32%, which is nearly matched by the Assessor's 2018 16.56% increase, exceeding the combined reductions by only 0.24%. This small difference indicates that the Assessor not only fully counteracted the relief granted through Plaintiff's appeals but also preserved a slight additional increase, effectively maintaining a higher assessed value.

76. The near mathematical equivalence between the cumulative reductions granted through the appeal process and the subsequent increases imposed by the Assessor is not coincidental, but evidences a mechanically consistent outcome in which any relief obtained is systematically negated in the following assessment cycle. This numerical symmetry demonstrates that the process does not function to correct inaccurate valuations, but instead operates in a manner that predictably restores and preserves elevated assessments over time, regardless of prior findings of error. As a result, the administrative review process fails to produce any lasting adjustment to value and instead

24

functions as a temporary and illusory interruption in an otherwise continuous upward assessment trajectory.

77. The records revealed that reductions granted through the statutory appeal process were subsequently offset by disproportionate increases imposed by the Assessor in the following assessment cycle, after which the Board of Review would again grant a reduction of roughly equivalent magnitude.

78. The percentages and amounts in the assessment cycles—7.88% reduction in 2017, 16.56% increase in 2018, and 8.44% reduction in 2019—show that the Cook County Assessor's Office and the Board of Review repeatedly adjusted the Subject Property's assessed values in direct response to Plaintiff's filing of legitimate, meritorious appeals. These successive increases and calibrated reductions occurred following each appeal, demonstrating that the Assessor acted in retaliation against Plaintiff for exercising the constitutionally protected right to challenge the assessment process, while the Board of Review's actions facilitated and reinforced this retaliatory pattern.

79. This pattern of alternating increases and reductions effectively restored the assessment to substantially the same level over successive years, thereby neutralizing the practical effect of the appeal determinations. The coordinated timing and magnitude of these adjustments demonstrate that the Assessor's Office and the Board of Review acted in concert to recalibrate the assessed value to predetermined levels following successful appeals, rendering the administrative review process illusory and depriving the Plaintiff of the substantive relief that the statutory appeal mechanism is intended to provide.

80. Upon information and belief, the assessment increases and corresponding adjustments identified by Plaintiff during the 2025 review—including those occurring during the 2017 through 2019 assessment cycles and the 2024 assessment and subsequent Board of Review adjustment—were implemented after Plaintiff filed appeals challenging the assessed values of the Subject Property before the Cook County Board of Review and later filed property tax objections in the Chancery Division of the Circuit Court of Cook County.

81. Upon information and belief, these increases were directly related to Plaintiff's repeated filings contesting the valuation of the Subject Property, and the Assessor and the Board of Review acted in concert to impose such increases and adjustments in retaliation against Plaintiff for engaging in these appeals and objections.

82. Plaintiff was in exercise of the constitutionally protected First Amendment right to petition the government and challenge governmental determinations affecting property rights.

83. Plaintiffs' tax objection cases in the Cook County Court are governed by amendments which substantially rewrote the relevant provisions of the Property Tax Code effective in 1995 (hereafter the "1995 Property Tax Code Amendments"). (See 35 ILCS 200/23-5 et seq. and related sections, as revised by P.A. 89-126, eff. July 11, 1995.) Although the Seventh Circuit Court of Appeals and the district courts have occasionally heard cases arising out of the Illinois tax system, no federal court has ever considered the adequacy of the 1995 Property Tax Code Amendments for purposes of due process or the Tax Injunction Act's requirement of a "plain, speedy and efficient remedy."

84. Documented cases in the Cook County Court, the positions advanced by the Cook County taxing authorities, various rulings of the Cook County Court, and rulings by the Illinois Appellate Court and the Seventh Circuit Court of Appeals, have all confirmed that the tax objection procedures under the Property Tax Code are inherently uncertain, unclear, involve extensive and unwarranted delays, and fail to provide a plain, speedy and efficient remedy for the violations of plaintiffs' federal and state constitutional rights.

85. The 1995 Property Tax Code Amendments created a process for tax objection complaints that differs significantly from normal civil actions. Among other features:

Tax objection complaints must be filed individually for each tax year and property; payment of the total annual taxes and exhaustion of the administrative remedy of appeal to the county BOR are prerequisites to the complaint. 35 ILCS 200/23-5 through 23-15. Class actions are prohibited, effectively overturning an Illinois Appellate Court decision allowing them prior to the 1995 Property Tax Code Amendments. 35 ILCS 200/23-15(a). (See In Re Application of Rosewell [etc.] v. Leyden Fire Protection District, 236 Ill. App.3d 165, 168-69 (1st Dist. 1992), overturned by legislation; see also Fakhoury v. Pappas, 395 Ill. App.3d 302, 308 (1st Dist. 2009).)

86. The county collector is the only taxing official expressly designated as a defendant. 35 ILCS 200/23-15(a). However, the collector is not required to appear formally or to answer or otherwise respond to the complaint. Id.

87. The amended statute fails to provide for the assessor to be named as a defendant even where, as in the instant cases, the assessor's conduct is the primary issue to be litigated.

27

88. Assessment valuations are presumed correct and legal, and the taxpayer challenging the valuation must prove them to be erroneous or illegal by clear and convincing evidence as to any relevant factual matter. 35 ILCS 200/23-15(b)(2).

89. However, access to any evidence from assessing officials is prohibited in cases alleging "incorrect valuation": if an objection is made claiming incorrect valuation, the court shall consider the objection without regard to the correctness of any practice, procedure, or method of valuation followed by the assessor, board of appeals, or board of review in making or reviewing the assessment, and without regard to the intent or motivation of any assessing official. 35 ILCS 200/23-15(b)(3) (hereafter the "Methodology Prohibition"). The Methodology Prohibition overturned a prominent feature of the tax objection procedure prior to the 1995 Amendments, in which access to assessing officials' evidence was freely available and was required in some cases. (In Re Application of County Collector [etc.] v. Ford Motor Company, 131 Ill.2d 541, 553 (1989) ("the taxpayer may be required in some cases to call the assessor to testify as to the manner in which the assessment was made"), overturned by legislation.)

90. The 1995 Property Tax Code Amendments also expressly abolished the doctrine of constructive fraud in tax objection proceedings. 35 ILCS 200/23-15(b)(3) states as follows:

> "[t]he doctrine known as constructive fraud is hereby abolished for purposes of all challenges to taxes, assessments, or levies."
> (35 ILCS 200/23-15(b)(3) (hereafter the "Constructive Fraud Abolition")).
> This statutory abolition, like the Methodology Prohibition, narrows the

scope of permissible challenges by eliminating any claim based on constructive fraud against assessing officials or other taxing authorities in proceedings under section 23-15 of the Property Tax Code."

91. The 1995 Property Tax Code Amendments codified a judicially created rule requiring exhaustion of the administrative remedy of appeal to the BOR prior to filing an assessment objection in court. 35 ILCS 200/23-10. Under the previous, generally accepted interpretation of this rule and a decision of the Illinois Appellate Court, no particular issues, including constitutional issues, needed to be raised in the BOR to exhaust the administrative remedy. (See In Re Application [etc.] v. Carpenter, 133 Ill. App.3d 142, 143, 146 (4th Dist. 1985).) Contrary to that interpretation, the Cook County Court retroactively required submission of the Taxpayers' specific constitutional arguments to the BOR as a precondition to exhaustion, resulting in the dismissal of federal and other constitutional claims in one case and threatening similar results in some other cases. Upon information and belief, the Cook County Court's exhaustion ruling has been selectively invoked by the Collector only in the cases brought by the instant Taxpayers to enforce their federal and state constitutional rights. Appellate review of the exhaustion ruling in any of the cases will not be available for years as a practical matter.

92. Because the Collector cannot be required to answer or otherwise plead in response to the plaintiffs' complaints, after more than a decade of litigation plaintiffs do not and cannot know the Collector's theory of defense against the constitutional claims in the Cook County Court. The 1995 Property Tax Code Amendments do not require that plaintiffs be informed of the Collector's defense theory prior to trial, or even during it.

29

93. Without the Assessor as a party defendant, discovery devices such as interrogatories, notices to produce, and requests to admit facts relating to the constitutional claims about the Assessor's misconduct are unavailable. Discovery directed to the Collector about the constitutional claims has consistently elicited the response that the Collector has no information about the Assessor's conduct.

94. Assessment valuations involve an applied science or craft that uses one or more methodologies to select one value conclusion from a range of possible values, based in theory on market data gathered from properties comparable to the subject property. Assessments and the methodologies used to produce them must be uniform among similarly situated properties, such as properties in the same class under the Classification Ordinance. It is impossible to prove in a judicial proceeding whether a given assessment valuation is incorrect or disparate, without analyzing the methodology used by the Assessor to select one valuation for the taxpayer's property from among the range of possible values. (See, e.g., CSX Transportation v. Georgia State Board of Equalization, 552 U.S. 9, 16-17 (2007).)

95. The 1995 Property Tax Code Amendments require the Taxpayers to rebut the presumption that the Assessor's valuations were correct and legal, by clear and convincing evidence, yet the Methodology Prohibition bars the Taxpayers from obtaining or using evidence of the methodologies used by the Assessor. This makes the presumption of correctness of the Assessor's valuations irrebuttable and makes the Methodology Prohibition inherently arbitrary and irrational.

96. The Cook County State's Attorney ("State's Attorney"), statutory counsel for the Collector and other taxing officials in the Cook County Court, has consistently argued that the Methodology Prohibition bars all evidence from the Assessor, even in challenges based on the Assessor's illegal and unconstitutional misconduct. In  Friedman v. Pappas, 94 Obj. 799 (7/24/02) a 2002 ruling, the Cook County Court accepted this argument and ordered that (1) the Assessor could not be named as a party defendant under the 1995 Property Tax Code Amendments, and (2) evidence from the Assessor or other assessing officials could not be obtained in discovery or admitted in evidence.

97. The Friedman order was reviewed in a consolidated appeal and was affirmed by the Illinois Appellate Court in an unpublished order. David Friedman v. Maria Pappas, No. 1-02-2685 and other consolidated cases (Ill. App. 1st Dist. 2003) (hereafter "Friedman appellate order"). (A copy of the Friedman appellate order is attached as Exhibit G.) The appellate court held that "constitutional objections – all of which challenge the practices, procedures and methods of assessment, cannot be raised in a complaint filed under section 23-15 [of the 1995 Property Tax Code Amendments] where the statute limits the scope of the proceeding." (Ex. G, at 13, emphasis added.) Though the unpublished Friedman order is not technically precedential, it represents a construction of the 1995 Property Tax Code Amendments, particularly the Methodology Prohibition, by the Illinois Appellate Court that could be applied to the instant cases on appeal. That would bar any hearing and final determination of the Taxpayers' constitutional claims under the Property Tax Code.

98.  Plaintiff has diligently pursued all available administrative remedies under the Illinois Property Tax Code continuously since 2016. Despite years of formal appeals, objections,

and participation in the prescribed administrative process, Plaintiff has obtained no meaningful relief. Instead, upon information and belief, the only consistent result of Plaintiff's exercise of these statutory rights has been retaliatory conduct, including successive increases in the assessed value of the subject property following the filing of administrative challenges, evidencing punitive treatment for engaging in protected remedial activity.

99. The statutory framework governing property tax objections in Illinois is narrowly confined to determinations of valuation correctness. It is well settled that the tax objection process permits only claims contesting the accuracy of an assessment, and does not authorize adjudication of constitutional violations, fraud, or ultra vires conduct. Correspondingly, any attempt by a taxpayer to assert such claims in a court of equity, including the Chancery Division, is routinely met with dismissal on the grounds of failure to exhaust administrative remedies, thereby creating a procedural bar to judicial review of non-valuation claims.

100. The combined effect of the Methodology Prohibition, the evidentiary limitations imposed in tax objection proceedings, and the consistent exclusion of the Assessor from judicial scrutiny operates to insulate the assessment process from any meaningful challenge. In practice, this framework permits assessments to be imposed and collected without transparency, accountability, or a verifiable factual foundation, thereby undermining the integrity of the system and depriving taxpayers of a fair opportunity to contest unlawful or unsupported valuations.

101.    As a result, the statutory scheme operates to foreclose any meaningful avenue for redress of constitutional grievances. To the extent that a remedy for such violations can be said to exist under the 1995 amendments to the Illinois Property Tax Code, it is illusory in practice and fails to satisfy the minimum requirements of due process. Specifically, the available procedures are neither plain, nor speedy, nor efficient, as required under governing constitutional principles and the Tax Injunction Act, thereby rendering the administrative process inadequate as a matter of law.

102.    These figures below demonstrate increases in assessed taxes beginning around 2022, despite there being no documentation or evidence from the Assessor's Office of any improvements or changes to the subject property that would justify such increases. As mentioned in the preceding paragraphs, hese increases coincide with the period during which the plaintiff began filing challenges to the assessed value through the BOR,Cook County Courts Civil and Chancery Divisions and,  the Property Tax Appeal Board (PTAB) all  seeking review and adjustment of the property's valuation. The chart is presented to illustrate the financial impact and damages sustained by the plaintiff as a result of the Assessor's "guess" as to the value of the subject property,, which appear inconsistent with any factual basis for the increases.

| Year | 1st Installment | 2nd Installment | 1st Payment Date | 2nd Payment Date | Total Tax |
|---|---|---|---|---|---|
| 2015 | $1,756.29 | $1,118.26 | 03/01/2016 | 08/01/2016 | $2,874.55 |
| 2016 | $1,845.54 | $1,178.56 | 03/01/2017 | 08/01/2017 | $3,024.10 |
| 2017 | $1,741.89 | $1,016.93 | 03/01/2018 | 08/01/2018 | $2,758.82 |
| 2018 | $1,517.35 | $1,551.66 | 03/01/2019 | 08/01/2019 | $3,069.01 |

| | | | | | |
|---|---|---|---|---|---|
| 2019 | $1,687.96 | $1,101.49 | 03/03/2020 | 08/03/2020 | $2,789.45 |
| 2020 | $1,534.20 | $1,205.04 | 03/02/2021 | 10/01/2021 | $2,739.24 |
| 2021 | $1,506.58 | $1,450.91 | 03/01/2022 | 12/30/2022 | $2,957.49 |
| 2022 | $1,626.62 | $1,376.15 | 04/03/2023 | 12/01/2023 | $3,002.77 |
| 2023 | $1,651.52 | $1,455.34 | 03/01/2024 | 08/01/2024 | $3,106.86 |
| 2024 | $1,708.77 | $2,128.75 | 03/04/2025 | 12/15/2025 | $3,837.52 |
| 2025 | $2,110.61 | $0.00 | 03/04/2025 | 12/15/2025 | $2,110.61 |
| Total Amount | | | | | $33,856.20 |

## COUNT I

## VIOLATION OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT

## TO THE UNITED STATES CONSTITUTION, PURSUANT TO 42 U.S.C. § 1983

103. Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs as though fully set forth herein.

104. For the reasons set forth above, the assessment, reassessment, and taxation of Plaintiff's subject property, in the amounts and for the tax years indicated, violate Plaintiff's right to due process of law under the Fourteenth Amendment to the United States Constitution, in that such assessments were not derived from any ascertainable, verifiable, or lawful determination of fair market value, but instead were based upon arbitrary, speculative, and unsupported valuation methods, including but not limited to "desk reviews," "educated guesses," and the selective use of non-comparable sales.

34

105. The Due Process Clause requires that property taxation be conducted pursuant to fundamentally fair procedures and based upon rational, non-arbitrary determinations supported by evidence. The actions described herein deprived Plaintiff of property without due process of law by imposing tax liabilities derived from valuations that lack any factual foundation, fail to comply with statutory mandates, and are incapable of meaningful verification or challenge.

106. The Cook County Assessor's Office failed to perform mandatory statutory duties, including but not limited to actual physical inspection of the property, maintenance of accurate and complete property records, documentation of valuation methodologies, and disclosure of the evidentiary basis for assessed values. The absence of such procedures deprived Plaintiff of notice and a meaningful opportunity to understand or challenge the basis of the assessments.

107. The statutory framework governing tax objections, including the prohibition against inquiry into valuation methodology and the restriction of claims to valuation correctness, operated in practice to deny Plaintiff a meaningful opportunity to be heard. By barring access to evidence necessary to rebut the presumption of correctness afforded to the Assessor's valuations, the process rendered Plaintiff's ability to challenge the assessments illusory and constitutionally deficient.

108. The actions of the Assessor, in determining and imposing assessed values based upon arbitrary and noncompliant methodologies, including systemic practices described herein, and in increasing such values in response to Plaintiff's exercise of appeal rights, constitute deprivations of property without due process of law and were taken under color of state law.

109. The actions of the Board of Review, in affirming, ratifying, and perpetuating such arbitrary valuations, relying upon non-comparable properties, and failing to provide timely and adequate notice of its determinations, deprived Plaintiff of a meaningful and fair review process, and were taken under color of state law.

110. The actions of the Collector, in certifying, extending, and collecting taxes based upon such arbitrary and unlawful assessments, despite actual or constructive knowledge that such assessments were not derived from lawful determinations of fair cash value, directly caused the continued deprivation of Plaintiff's property without due process of law and were taken under color of state law.

111. Defendant Cook County, through its policymakers, supervisory authority, and institutional control over the Assessor, Board of Review, and Collector, maintained, permitted, and enforced a systemic pattern, practice, and custom of property assessment and taxation that is arbitrary, non-uniform, and not grounded in lawful valuation standards. Cook County knew or should have known of these unconstitutional practices, including the failure to comply with statutory duties, the use of speculative valuation methods, and the denial of meaningful procedural protections, yet failed to take corrective action.

112. The unconstitutional acts described herein were carried out pursuant to and in furtherance of these customs, policies, and practices of Cook County, and were not isolated incidents but part of a widespread and persistent pattern of conduct that deprived Plaintiff and similarly situated taxpayers of due process of law.

113. As a direct and proximate result of the foregoing unconstitutional conduct by all Defendants, Plaintiff has been deprived of property through the payment of taxes based

36

upon unlawful assessments, has been denied a meaningful opportunity to challenge such assessments, and has suffered ongoing financial harm.

WHEREFORE, for the reasons specified above, Plaintiff prays:

a. That the Court enter a declaratory judgment that the assessments of the subject property for the tax years at issue were arbitrary, unlawful, and unconstitutional, and were imposed in violation of Plaintiff's right to due process under the Fourteenth Amendment;

b. That the Court find and declare that Plaintiff is entitled to a refund of taxes paid as a result of such unconstitutional assessments, together with applicable statutory interest;

c. That the Collector be enjoined to refund the taxes collected upon such unlawful assessments, with interest as provided by law;

d. Plaintiff further seeks injunctive relief to prohibit and restrain Defendants, and all persons acting in concert with them, from taking any action to demand, collect, enforce, or otherwise attempt to obtain payment of property taxes derived from the Subject Property's assessed valuation, where such valuation has been established through methods that are arbitrary, speculative, and in violation of the statutory and constitutional requirements set forth herein.

e. That Plaintiff be granted such other and further relief as this Court deems equitable and just.

## COUNT II

## VIOLATION OF SUBSTANTIVE DUE PROCESS UNDER THE FOURTEENTH AMENDMENT **TO THE UNITED STATES CONSTITUTION, PURSUANT TO 42 U.S.C. § 1983**

114. Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs as though fully set forth herein.

115. For the reasons set forth above, the assessment, reassessment, and taxation of Plaintiff's subject property, in the amounts and for the tax years indicated, violate Plaintiff's substantive due process rights under the Fourteenth Amendment to the United States Constitution, in that such assessments were arbitrary, capricious, and not rationally related to any legitimate governmental purpose.

116. Defendants, including the Cook County Assessor, Cook County Board of Review, and Cook County, engaged in conduct that was not grounded in lawful valuation principles, but instead relied upon speculative, unsupported, and undocumented "educated guess" determinations, the selective use of non-comparable sales, and the disregard of mandatory statutory duties governing property assessment.

117. The conduct described herein lacked any rational basis and constituted an abuse of governmental authority, as the assessments imposed were not tied to actual fair market

38

value, were unsupported by verifiable data, and were implemented without adherence to required procedures or evidentiary standards.

118.    Defendants further engaged in a systematic pattern and practice of neutralizing the results of administrative appeals by imposing disproportionate post-appeal increases followed by partial reductions, thereby maintaining inflated valuations while creating the appearance of procedural compliance.

119.    Such conduct was intentional, arbitrary, and conscience-shocking, in that it reflects a deliberate misuse of governmental power to impose and preserve unlawful tax burdens on Plaintiff without justification in law or fact.

120.    The actions of the Assessor, in determining and imposing assessments based on arbitrary and noncompliant methodologies, and in implementing systematic practices described herein, were taken under color of state law and deprived Plaintiff of substantive due process.

121.    The actions of the Board of Review, in affirming, ratifying, and perpetuating such arbitrary valuations, and in participating in the pattern of offsetting increases and reductions, further deprived Plaintiff of substantive due process and were taken under color of state law.

122.    Defendant Cook County, through its policymakers, supervisory authority, and institutional control over the Assessor and Board of Review, maintained, permitted, and enforced a systemic pattern, practice, and custom of arbitrary and irrational property assessment practices. Cook County knew or should have known of these unconstitutional practices and failed to take corrective action.

123. The unconstitutional conduct described herein was carried out pursuant to these customs, policies, and practices of Cook County and constitutes a widespread and persistent pattern of arbitrary governmental action.

124. As a direct and proximate result of the foregoing unconstitutional conduct by all Defendants, Plaintiff has been deprived of property through the imposition and collection of taxes based upon arbitrary and irrational assessments, and has suffered ongoing financial harm.

WHEREFORE, for the reasons specified above, Plaintiff prays:

a. That the Court enter a declaratory judgment that the assessments of the subject property for the tax years at issue were arbitrary, capricious, and unconstitutional, in violation of Plaintiff's substantive due process rights under the Fourteenth Amendment;

b. That the Court find and declare that Plaintiff is entitled to a refund of taxes paid as a result of such unconstitutional assessments, together with applicable statutory interest;

c. That the Collector be enjoined to refund the taxes collected upon such unlawful assessments, with interest as provided by law;

d. Plaintiff further seeks injunctive relief to prohibit and restrain Defendants, and all persons acting in concert with them, from taking any action to demand, collect, enforce, or otherwise attempt to obtain payment of property taxes derived from the Subject Property's assessed valuation, where such valuation has been established through methods that are arbitrary, speculative, and in violation of the statutory and constitutional requirements set forth herein.

e. That Plaintiff be granted such other and further relief as this Court deems equitable and just.

## COUNT III

## VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (CLASS-OF-ONE), PURSUANT TO 42 U.S.C. § 1983

125.   Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs as though fully set forth herein.

126.   For the reasons set forth above, the assessment, reassessment, and taxation of Plaintiff's subject property, in the amounts and for the tax years indicated, violate Plaintiff's right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution, in that Plaintiff has been intentionally treated differently from other similarly situated property owners without any rational basis.

127.   The Equal Protection Clause requires that similarly situated taxpayers be treated alike and that property assessments be uniform, proportionate, and based upon consistent and lawful standards. The actions described herein resulted in Plaintiff's property being assessed at disproportionately higher values than comparable properties sharing similar characteristics, without any legitimate or rational justification.

128.   Plaintiff identified multiple comparable properties within the same geographic area that possessed similar physical characteristics, condition, and utility, yet were assessed at substantially lower values or experienced significantly smaller increases during the same

41

assessment periods. These disparities were not isolated or incidental but reflect a consistent pattern of unequal treatment directed at Plaintiff's property.

129. The Cook County Assessor's Office, through its use of selective and non-comparable sales, "desk review" practices, and arbitrary valuation techniques, intentionally deviated from uniform assessment standards in a manner that singled out Plaintiff's property for disproportionate and excessive valuation. Such conduct lacks any rational basis and departs from both statutory requirements and accepted appraisal principles.

130. Upon information and belief, the disproportionate increases in Plaintiff's assessed value, particularly following Plaintiff's repeated appeals and legal challenges, were not the result of neutral or uniformly applied assessment practices, but instead constituted intentional and retaliatory treatment unique to Plaintiff, further evidencing a class-of-one equal protection violation.

131. The actions of the Assessor, in selectively applying valuation methods and imposing disproportionate increases upon Plaintiff's property, constitute intentional and irrational discrimination against Plaintiff as compared to similarly situated property owners, and were taken under color of state law.

132. The actions of the Board of Review, in affirming and perpetuating such unequal treatment, relying upon non-comparable properties, and failing to correct the disparities in assessment, further deprived Plaintiff of equal protection of the laws and were taken under color of state law.

133. The actions of the Collector, in extending and collecting taxes based upon these discriminatory and non-uniform assessments, directly contributed to the continued unequal treatment of Plaintiff and were taken under color of state law.

134. Defendant Cook County, through its policies, customs, and practices, maintained and permitted a system of property assessment and taxation that results in non-uniform and discriminatory treatment among similarly situated taxpayers. Cook County knew or should have known of these disparities and failed to take corrective action, thereby allowing a pattern and practice of unequal treatment to persist.

135. The unconstitutional acts described herein were carried out pursuant to these policies, customs, and practices, and were not isolated incidents but part of a broader pattern of discriminatory assessment practices affecting Plaintiff and similarly situated taxpayers.

136. As a direct and proximate result of the foregoing unconstitutional conduct by all Defendants, Plaintiff has been subjected to unequal and discriminatory taxation, has paid taxes in excess of those imposed upon similarly situated property owners, and has suffered financial harm.

**137. WHEREFORE, for the reasons specified above, Plaintiff prays:**

138. a. That the Court enter a declaratory judgment that the assessments of the subject property for the tax years at issue were non-uniform, discriminatory, and unconstitutional, and were imposed in violation of Plaintiff's right to equal protection under the Fourteenth Amendment;

139. b. That the Court find and declare that Plaintiff is entitled to a refund of taxes paid as a result of such unconstitutional and discriminatory assessments, together with applicable statutory interest;

140. c. That the Collector be enjoined to refund the taxes collected upon such unlawful and discriminatory assessments, with interest as provided by law;

141. d. That the Court enter a preliminary and permanent injunction prohibiting and restraining Defendants, and all persons acting in concert with them, from demanding, collecting, enforcing, or otherwise attempting to obtain payment of property taxes derived from the Subject Property's assessed valuation where such valuation is the product of non-uniform, discriminatory, and unconstitutional assessment practices;

142. e. That Plaintiff be granted such other and further relief as this Court deems equitable and just.

## COUNT IV

## VIOLATION OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION, PURSUANT TO 42 U.S.C. § 1983

143. Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs as though fully set forth herein.

144. For the reasons set forth above, Defendants' actions in assessing, reassessing, and taxing Plaintiff's subject property, and in taking related actions, constitute a violation of Plaintiff's rights under the First Amendment to the United States Constitution. Plaintiff engaged in constitutionally protected activity, including the exercise of rights to petition for redress of grievances and to challenge governmental action through administrative appeals and judicial processes, and Defendants' conduct interfered with and burdened the exercise of those rights.

145. The First Amendment prohibits government officials from taking actions that infringe upon the exercise of protected rights, including the right to petition and the right to free speech. The actions described herein—including unlawful and arbitrary increases in

property assessments, denial of access to evidence by refusing to maintain records, selective application of valuation methods, and continued enforcement of tax collection—were imposed in a manner that unconstitutionally penalizes Plaintiff for asserting these legal rights.

146.    Upon information and belief, these actions were not the result of neutral or uniformly applied assessment procedures, but rather a deliberate pattern of conduct targeting Plaintiff's exercise of protected rights. Such conduct demonstrates a causal connection between Plaintiff's protected activity and the adverse actions affecting the subject property.

147.    The Cook County Assessor, Board of Review, and Collector, acting under color of state law, knowingly engaged in these practices, depriving Plaintiff of property, imposing financial harm, and chilling Plaintiff's exercise of First Amendment rights.

148.    As a direct and proximate result of the foregoing conduct, Plaintiff has suffered harm, including payment of taxes based on unlawful assessments, denial of a meaningful opportunity to challenge those assessments, and the ongoing threat of enforcement actions.

149.    **WHEREFORE, for the reasons specified above, Plaintiff prays:**

150.    a. That the Court enter a declaratory judgment that Defendants' actions in assessing, reassessing, and taxing Plaintiff's subject property constitute a violation of the First Amendment;

151.    b. That the Court find and declare that Plaintiff is entitled to a refund of taxes paid as a result of such unconstitutional assessments, together with applicable statutory interest;

45

152. c. That the Collector be enjoined to refund the taxes collected upon such assessments, with interest as provided by law;

153. d. That the Court enter a preliminary and permanent injunction prohibiting and restraining Defendants, and all persons acting in concert with them, from demanding, collecting, enforcing, or otherwise attempting to obtain payment of property taxes derived from the Subject Property's assessed valuation where such valuation was imposed in violation of Plaintiff's First Amendment rights;

154. e. That Plaintiff be granted such other and further relief as this Court deems equitable and just.

## COUNT V

## VIOLATION OF THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION, PURSUANT TO 42 U.S.C. § 1983

Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs as though fully set forth herein.

155. The Takings Clause of the Fifth Amendment, applied to the States through the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation.

156. In Cook County, failure to pay property taxes triggers a structured enforcement mechanism that can result in the loss of one's property. Unpaid taxes are first certified by

46

the Cook County Collector, and if the total unpaid balance reaches approximately $10,000, the Collector is authorized to sell the delinquent tax debt to a third-party purchaser regardless of the actual value of the property may be. The purchaser, having acquired the right to the debt, may then initiate foreclosure proceedings and ultimately obtain a tax deed to the property, effectively transferring ownership. This statutory framework creates a situation where the financial threshold for losing a property through tax foreclosure is dramatically lower than the actual fair market value of the property, exposing taxpayers to the risk of losing real estate worth many times the amount of their unpaid taxes.

157.    Plaintiff has been required to pay taxes based upon arbitrary, unsupported, and unlawful assessments, calculated without reference to verifiable fair market value or adherence to statutory requirements. The payment of such taxes constitutes a taking of Plaintiff's property without just compensation, as the government has effectively seized Plaintiff's funds under an invalid and coercive valuation process.

158.    The risk of involuntary divestiture through the tax-sale and foreclosure process, combined with the payment of taxes derived from arbitrary assessments, imposes a disproportionate and unconstitutional burden on Plaintiff, depriving Plaintiff of property rights in violation of the Takings Clause.

159.    The actions of Defendants, in maintaining, enforcing, and implementing these arbitrary and unlawful assessment practices, and in facilitating the collection of taxes through a system that can transfer property for amounts far below market value, constitute a governmental taking of Plaintiff's property without just compensation.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

a. Enter a declaratory judgment that the payment of taxes pursuant to the unlawful assessments, and the potential foreclosure or transfer of property under the statutory tax-sale process, constitute a taking under the Fifth and Fourteenth Amendments;

b. Enjoin Defendants from enforcing, collecting, or demanding payment of taxes derived from assessments imposed in violation of law or constitutional standards, including any actions that could lead to tax-sale foreclosure;

c. Grant such other and further relief as this Court deems just and equitable.

## COUNT VI

## VIOLATION OF DUE PROCESS UNDER THE ILLINOIS CONSTITUTION, ARTICLE I, § 2

160. Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs as though fully set forth herein.

161. Article I, § 2 of the Illinois Constitution guarantees that no person shall be deprived of life, liberty, or property without due process of law.

162. The assessments, reassessments, and taxation of Plaintiff's subject property, in the amounts and for the tax years indicated, were imposed without adherence to lawful procedures or statutory requirements. Such assessments were arbitrary, unsupported by verifiable evidence, and failed to account for actual fair market value.

163. Defendants, including the Cook County Assessor, Board of Review, and Collector, engaged in practices that deprived Plaintiff of adequate notice, access to records, and the opportunity to meaningfully challenge the assessments. These actions include, without limitation, selective application of valuation methods, reliance on non-comparable properties, denial of access to evidence, and the enforcement of tax collection despite known defects in assessment procedures.

164. The statutory framework governing tax objections, combined with the actions of Defendants, prevented Plaintiff from exercising any meaningful procedural rights, effectively rendering Plaintiff unable to contest arbitrary or unlawful assessments in violation of the Illinois Constitution.

165. As a direct and proximate result of the foregoing actions, Plaintiff has been deprived of property without due process of law, suffered financial harm, and continues to face the threat of enforcement actions, including collection and potential foreclosure, based upon unlawful assessments.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

a. Enter a declaratory judgment that the assessments of the subject property for the tax years at issue were arbitrary, unlawful, and unconstitutional, and were imposed in violation of Plaintiff's right to due process under Article I, § 2 of the Illinois Constitution;

b. Enjoin Defendants from demanding, collecting, or enforcing taxes based upon assessments imposed in violation of the Illinois Constitution;

c. Grant such other and further relief as this Court deems just and equitable.

# COUNT VII

# VIOLATION OF EQUAL PROTECTION AND UNIFORMITY UNDER THE ILLINOIS CONSTITUTION, ART. I, § 2 AND ART. IX, § 4(b), AND MAINTENANCE OF AN UNCONSTITUTIONAL AND ILLEGAL CLASSIFICATION SYSTEM

Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs as though fully set forth herein.

166.    Article I, § 2 of the Illinois Constitution guarantees that no person shall be denied equal protection under the law, and Article IX, § 4(b) requires uniformity in taxation of real property within classes of property.

167.    The assessment and taxation practices employed by Defendants, including the Cook County Assessor, Board of Review, and Collector, have created a system in which similarly situated properties are assessed and taxed in a non-uniform, arbitrary, and discriminatory manner.

168.    Plaintiff has been subjected to disproportionately high assessments, arbitrary application of valuation methodologies, and selective use of non-comparable sales, while other taxpayers are assessed differently under materially similar circumstances. Such practices constitute an illegal classification system that lacks any rational basis, factual foundation, or adherence to statutory or constitutional mandates.

169. The systemic enforcement of these arbitrary and non-uniform assessments deprives Plaintiff of equal protection of the law and violates the constitutional requirement of uniformity in property taxation.

170. As a direct and proximate result of these unconstitutional practices, Plaintiff has suffered financial harm, been deprived of property without proper justification, and continues to face the threat of enforcement actions, including collection and potential foreclosure, based upon assessments that are neither fair nor uniform.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

a. Enter a declaratory judgment that the assessments and classifications applied to Plaintiff's subject property for the tax years at issue are arbitrary, unlawful, discriminatory, and in violation of Articles I, § 2 and IX, § 4(b) of the Illinois Constitution;

b. Enjoin Defendants from applying or enforcing non-uniform or discriminatory assessment and taxation practices with respect to Plaintiff and similarly situated taxpayers;

c. Grant such other and further relief as this Court deems just and equitable.

## COUNT VIII

## TAKING OF PROPERTY WITHOUT JUST COMPENSATION UNDER THE ILLINOIS CONSTITUTION, ART. I, § 15

171. Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs as though fully set forth herein.

172. Article I, § 15 of the Illinois Constitution guarantees that private property shall not be taken or damaged for public use without just compensation.

173. In Cook County, failure to pay property taxes triggers a structured enforcement mechanism that can result in the loss of one's property. Unpaid taxes are first certified by the Cook County Collector, and if the total unpaid balance reaches approximately $10,000, the Collector is authorized to sell the delinquent tax debt to a third-party purchaser. The purchaser, having acquired the right to the debt, may then initiate foreclosure proceedings and ultimately obtain a tax deed to the property, effectively transferring ownership.

174. This statutory framework subjects property owners to the risk of losing real estate worth many times the amount of their unpaid taxes. The financial threshold for losing property through tax foreclosure is dramatically lower than the actual fair market value of the property, creating a coercive mechanism in which even modest unpaid assessments can trigger involuntary divestiture of property.

175. Plaintiff has been subjected to assessments that are arbitrary, unsupported, and inflated, which directly increase the risk of losing property through the tax-sale mechanism described above. As a result, Plaintiff has been forced to pay taxes derived from assessments that do not reflect lawful or fair market valuations. The payment of such taxes, combined with the potential for foreclosure and loss of property at a fraction of its actual value, constitutes a taking of property without just compensation.

176. Defendants' actions, under color of law, have directly caused the deprivation of Plaintiff's property rights, including both the financial loss from unlawful tax payments and the substantial risk of involuntary divestiture, in violation of the Takings Clause of the Illinois Constitution.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

a. Enter a declaratory judgment that the collection of taxes and the enforcement of arbitrary and unsupported assessments, including the operation of the tax-sale and foreclosure mechanism, constitute a taking of property without just compensation under Article I, § 15 of the Illinois Constitution;

b. Enjoin Defendants from enforcing, collecting, or attempting to collect property taxes based upon arbitrary, unsupported, or inflated valuations;

c. Grant such other and further relief as this Court deems just and equitable.

## COUNT IX

## INCORRECT AND ILLEGAL VALUATION IN VIOLATION OF THE ILLINOIS PROPERTY TAX CODE

Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs as though fully set forth herein.

177.    Under the Illinois Property Tax Code, 35 ILCS 200/1-1 et seq., county assessors are required to perform specific statutory duties to determine the fair cash value of real property, including accurate measurement, inspection, maintenance of property records, and application of uniform valuation methodologies.

178.    The Assessor's Office has failed to comply with these statutory requirements by imposing arbitrary, unsupported, and selective valuations of Plaintiff's property, including:

a. Using non-comparable sales;

b. Applying speculative or desk-review methods rather than actual inspection;

53

c. Failing to maintain accurate and complete property records;

d. Denying Plaintiff access to evidence necessary to challenge valuations.

179. These actions constitute a direct violation of the Illinois Property Tax Code, which mandates that property be assessed uniformly, fairly, and based upon verifiable evidence.

180. As a direct and proximate result of these illegal and incorrect valuations, Plaintiff has been subjected to excessive tax bills, the threat of enforcement actions including tax-sale and foreclosure, and other financial and property harms.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

a. Enter a declaratory judgment that the assessments of Plaintiff's property for the tax years at issue are unlawful, arbitrary, and in violation of the Illinois Property Tax Code;

b. Enjoin Defendants from enforcing or collecting property taxes based upon such illegal and incorrect assessments;

c. Grant such other and further relief as this Court deems equitable and just.

## COUNT X

### FRAUD / CONSTRUCTIVE FRAUD

181. Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs as though fully set forth herein.

182. Defendants, acting individually and in concert through their respective offices, engaged in representations, omissions, and practices regarding the assessment, reassessment, and taxation of Plaintiff's property that were false, misleading, or intentionally incomplete.

54

183. Specifically, Defendants represented or implied that assessments were based on accurate, verifiable, and lawful determinations of fair market value, while, in fact, assessments were arbitrary, selective, and unsupported by proper evidence or statutory procedures.

184. Defendants knowingly or recklessly failed to disclose critical information regarding valuation methodologies, access to records, and the procedural limitations imposed on taxpayers challenging assessments, thereby preventing Plaintiff from understanding or contesting the basis for taxation.

185. These acts and omissions were material, in that they caused Plaintiff to pay taxes based on improper valuations and exposed Plaintiff to the risk of financial harm, including the sale of tax debt and potential loss of property.

186. Plaintiff reasonably relied upon Defendants' representations, omissions, and conduct in paying taxes and navigating the assessment and appeal process.

187. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered substantial economic loss, including overpayment of taxes, denial of refunds, and potential deprivation of property rights.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

a. Declare that Defendants' conduct constitutes fraud or constructive fraud;

b. Enjoin Defendants from enforcing or continuing practices that perpetuate misrepresentations or omissions regarding property assessments and taxation;

c. Require restoration or refund of any payments made pursuant to improper assessments;

d. Grant such other and further relief as the Court deems equitable and just.

## COUNT XII

## CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS

188. Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs as though fully set forth herein.

189. Defendants, acting in concert through their respective offices and agents, reached an understanding and agreement, express or implied, to engage in a coordinated course of conduct that would deprive Plaintiff of constitutional rights guaranteed under the United States Constitution and the Illinois Constitution.

190. The object of this conspiracy was to impose, enforce, and collect property taxes based upon assessments that were arbitrary, speculative, and not derived from lawful determinations of fair market value, thereby depriving Plaintiff of property without due process of law, in violation of the Fourteenth Amendment and Article I, § 2 of the Illinois Constitution.

191. In furtherance of the conspiracy, Defendants knowingly engaged in acts including, but not limited to:

a. Establishing and enforcing non-uniform assessment and valuation practices;

b. Denying Plaintiff access to evidence and procedural tools necessary to challenge assessments;

c. Increasing assessed values in response to Plaintiff's lawful appeals;

d. Certifying and collecting taxes on unlawful assessments; and

e. Maintaining policies, customs, and practices that facilitate arbitrary taxation and deny meaningful recourse to taxpayers.

192. Each Defendant acted under color of state law and with knowledge that such coordinated acts would deprive Plaintiff of constitutional rights.

193. As a direct and proximate result of Defendants' conspiracy, Plaintiff has suffered actual and threatened financial harm, loss of property rights, and deprivation of constitutionally protected procedural and substantive rights.

**WHEREFORE,** Plaintiff respectfully prays that this Court:

a. Declare that Defendants' conduct constitutes a conspiracy to deprive Plaintiff of constitutional rights;

b. Enjoin Defendants from engaging in coordinated practices that result in unconstitutional assessments or enforcement of taxes;

c. Grant such other and further relief as the Court deems equitable and just.

## COUNT XI

## MONELL LIABILITY AGAINST COOK COUNTY

194. Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs as though fully set forth herein.

195. Cook County, through its policymakers, supervisory authority, and institutional control over the Assessor, Board of Review, and Collector, maintained, permitted, and enforced a persistent and widespread pattern, practice, and custom of assessing and taxing property in an arbitrary, non-uniform, and unlawful manner.

196. The unconstitutional and illegal acts described in the preceding counts—including arbitrary valuation, denial of access to records, improper certification of tax debt, and enforcement of tax collection based upon such valuations—were carried out pursuant to these customs, policies, and practices of Cook County and were not isolated incidents.

197. Cook County knew or should have known of these practices, including the failure to comply with statutory duties, the use of unsupported valuation methods, and the denial of meaningful procedural protections, yet failed to take corrective action.

198. As a direct and proximate result of these customs, policies, and practices, Plaintiff has suffered and continues to suffer deprivation of property, financial harm, and the denial of constitutional and statutory rights.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

 a. Enter a declaratory judgment that Cook County's policies, practices, and customs, as applied to Plaintiff, are unconstitutional, unlawful, and violate Plaintiff's rights under the United States Constitution and Illinois law;

 b. Enjoin Cook County from continuing to enforce, apply, or permit the enforcement of these unconstitutional or illegal policies, practices, and customs;

 c. Grant such other and further relief as this Court deems equitable and just.

End of complaint.

59

Respectfully Submitted on 3/30/2026

Andrew Slabon
2644 N. MASON
CHICAGO IL, 60639
312-600-5097
andrewslabon@gmail.com